**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLOCK ELECTRIC COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ARVESEN, an individual, JOHN R. SHANNON, an individual, BRIDGET SHANNON, an individual, TIM SHANNON, an individual, MIDWEST INTERSTATE ELECTRICAL CONSTRUCTION CO., an Illinois corporation and MIDWEST INTERSTATE TECHNOLOGIES, INC., an Illinois corporation,<br><br>Defendants. | ) | Case No.: 1:26-cv-02950<br><br>Jury Demand |

**COMPLAINT FOR INJUNCTIVE AND MONETARY RELIEF**

Plaintiff, BLOCK ELECTRIC COMPANY, INC., by its attorneys, and for its Complaint for Injunctive and Monetary Relief ("Complaint") against each of the Defendants, alleges:

**NATURE OF THE ACTION**

1. This case involves a conspiracy and theft by the Defendants of highly confidential and proprietary trade secret bidding and pricing information from Plaintiff Block Electric Company, Inc. ("Plaintiff" and/or "Block"), in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

2. As a direct result of Defendants' statutory and common law violations alleged herein, Defendants have interfered, and intend to continue to interfere,[1] with client relationships

[1] Plaintiff served Defendant Midwest with a "cease and desist" letter on October 30, 2023, to which Midwest consented on October 31, 2023. However, based on information and belief, as alleged herein, Plaintiff believes Defendants may have continued to commit violations through Defendant Midwest Interstate Technologies, Inc., a related entity, as more fully alleged herein.

through their illegal use of Plaintiff's protected trade secret information unless judicial relief is granted as prayed for below.

3. Plaintiff brings this action to obtain injunctive relief to prevent the Defendants from further tortious and illegal conduct and for monetary damages as provided by statute and allowed under common law.

**JURISDICTION, VENUE AND PARTIES**

4. Subject matter jurisdiction is proper in this Court pursuant to: (a) 28 U.S.C. § 1331, founded upon the existence of claims arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (b); and 28 U.S.C. § 1367 (supplemental and pendant jurisdiction) as to the state law claims.

5. Personal jurisdiction is proper in this Court as to all Defendants. The claims against each Defendant arise out of a business relationship substantially connected with this State and/or because the Defendants committed tortious acts in this State. 735 ILCS § 5/2-209(a)(2), (b)(2), (4).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as each of the Defendants are residents of this District and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

7. Block is an Illinois-organized corporation based in Niles, Illinois. Block is a commercial electrical contractor that has provided services, management, and products to customers throughout Illinois and other States since 1920. Block provides electrical contracting services to a variety of customers that rely on and utilize Block's electrical work in providing their own services nationwide.

8. Defendant, Michael Arvesen ("Arvesen"), is an individual who resides within this District at 10551 South Lawndale, Chicago, Illinois. Arvesen worked at Block from August 16,

1993, until January 23, 2018, when he resigned to join Defendant, Midwest Interstate Electrical Construction Co. ("Midwest"). Arvesen was a project manager at Block from approximately 2000 until 2018. According to Midwest's public website, Arvesen is currently an executive and the Chief Operating Officer of Midwest.

9. Defendant, John R. Shannon ("Shannon") is an individual who, based on information and belief, resides within the Northern District of Illinois ("this District"). According to Midwest's public website, Shannon is the President of Midwest and was instrumental in hiring Arvesen. Shannon acquired ownership and/or control of Midwest from its previous owners in or about January 2018.

10. Defendant Bridget Shannon ("Bridget Shannon") is an individual who, based on information and belief, resides within this District. Bridget Shannon is President of Defendant Midwest Interstate Technologies, Inc.

11. Tim Shannon ("Tim Shannon") is an individual who, based on information and belief, resides within this District. Tim Shannon is the son of Defendants, John Shannon and Bridget Shannon, and is employed by and/or provides project management and estimating services for both Defendant Midwest Interstate Electrical Construction Co. and Midwest Interstate Technologies, Inc.

12. Defendant Midwest Interstate Electrical Construction Co. ("Midwest") is an Illinois-organized corporation located at 1801 West 103rd Street, Chicago, Illinois. Midwest is in the business of providing electrical contracting services and materials in commercial settings.

13. Defendant Midwest Interstate Technologies, Inc. ("MIT") is an Illinois-organized corporation, also located at 1801 West 103rd Street, Chicago, Illinois, within the same offices as Midwest. MIT is a purported women business enterprise ("WBE") that claims to do electrical

construction similar to Midwest. Bridget Shannon is the wife of Defendant John R. Shannon. Bridget Shannon ostensibly owns 51% of MIT and is held out to the public as the controlling person of MIT for purposes of qualifying to obtain contracts earmarked as WBE projects.

**GENERAL ALLEGATIONS**

14. Based on information and belief, when Shannon acquired control and/or ownership of Midwest, the company primarily performed "A Card" work, meaning, its electricians were certified pursuant to the International Brotherhood of Electrical Workers ("IBEW") to perform all types of commercial, industrial and residential work. Shannon was not particularly familiar with bidding for and managing A Card work as he had concentrated in bidding and managing "C Card" electrical work, which the IBEW regards as low-voltage work such as installing, testing and maintaining surveillance, telephone and data security, fire alarms and audio-visual equipment in commercial environments.

15. Shannon needed someone who might help Midwest and MIT bid and manage A Card work and, as it turns out, he had a close friend in Arvesen who had been involved in bidding and managing A Card work throughout his twenty-four-year career at Block. Based on information and belief, Shannon persuaded Arvesen to leave Block by offering him equity in Midwest and naming him Midwest's Chief Operating Officer.

16. Upon joining Midwest, Arvesen, Shannon, Bridget Shannon and Tim Shannon realized that Midwest did not possess a software program sufficient to assist them in formulating bids for A Card work. Arvesen prevailed upon the other Defendants to purchase a bidding software program known as Accubid – a program contractors use in formulating bids that they then incorporate into the proposals submitted to owners or general contractors. Defendants agreed to acquire an Accubid license, however upon doing so, Arvesen discovered the Accubid software

program contained only generic bidding data and not the same proprietary bidding data he had routinely used to estimate and manage countless projects for Block.

17. Arvesen, Shannon, Bridget Shannon and Tim Shannon then agreed that if they could gain access to Block's Accubid program which contained its proprietary bidding data, they would immediately be able to compete against Block and other more established electrical contractors that possessed the knowledge and experience to bid and manage A Card projects.

18. Arvesen, Shannon, Bridget Shannon, Tim Shannon or others at their direction, developed a scheme and plan to misappropriate Block's highly confidential and proprietary bidding data for creating and submitting bids and pricing for jobs, as well as other methods and processes of doing business ("Block Protected Information").

19. Block's Protected Information consists of confidential data and information contained in a secured, separate, computer-stored master database (referred to herein as the "Block Master Database" and/or "Master Database") from where the information can be accessed only by certain high-level Block employees and downloaded to a generic Accubid program. Based on information and belief, Block's Protected Information and Block's Master Database were misappropriated in or about January 2018 by Arvesen and the other defendants with the aid of Gerald Hughes ("Hughes") who then was a Block project manager. Unknown to Block, Arvesen, Shannon, Bridget Shannon, Tim Shannon, and others at Midwest and MIT have misused Block's Protected Information in preparing bidding proposals for electrical contracts since.

20. Block first discovered Defendants' theft and misuse of its Block Protected Information on January 24, 2023, when Block and Midwest were considering collaborating on a bid for a job at the BMO/Harris Bank Annex at 115 South LaSalle Street in Chicago, Illinois.

21. Thereafter, on October 25, 2023, pursuant to subpoena, Arvesen was deposed as a

non-party witness in litigation then pending in the United States District Court for the Northern District of Illinois, entitled: *Block Electric Company, Inc. v. Joseph Jozsa, et al.*, No. 23-cv-00795 (the "IBS Litigation"). Arvesen was deposed regarding his relationship and communications with Hughes. In the IBS Litigation, Block alleged, as it does here, that the defendants misappropriated and misused Block's Protected Information in violation of the Defend Trade Secrets Act, 28 U.S.C. § 1836, *et seq.*[2]

22. In his deposition, Arvesen confirmed, under oath, to having submitted to Block a Microsoft Excel ("Excel") spreadsheet which he and other Midwest employees, namely, Jack Shannon and Tim Shannon, had prepared for the joint bid with Block for the electrical job in the BMO Bank Annex. It was upon reviewing Midwest's Excel spreadsheet for the joint bid, that Block executives discovered it contained Block Protected Information that could only have been obtained from Block's proprietary Master Database.

23. After further questioning in his deposition, Arvesen testified that the data inserted by him and the other Defendants in the Excel spreadsheet he shared with Block came from an unidentified flash drive he claimed to have found in his home mailbox. Although Arvesen testified to not knowing who put the flash drive in his mailbox or what it contained, he, nevertheless downloaded the information from the mysterious flash drive to his Midwest company-issued laptop computer.

24. In fact, Arvesen knew precisely when he downloaded the flash-drive-stored information that it was Block's Protected Information because he had used the same Block Protected Information for the last eighteen years of his employment as a project manager at Block

[2] The IBS Litigation was dismissed October 28, 2025, following a stipulation of the parties.

while preparing literally hundreds of bids.

25. More directly, on information and belief, Arvesen knew the flash drive contained stolen Block Protected information because he had contacted Hughes, while Hughes was an employee at Block, and asked Hughes to provide him with a flash drive of Block's proprietary version of Accubid (*i.e.*, Block's Protected Information), which Hughes did. And in fact, four years later, in 2022, Arvesen returned the favor to Hughes by sending him the stolen Block Protected Information when Hughes suddenly quit Block in April 2022 and went to work for competitor, Interactive Business Solutions, LLC. Then, Hughes was alleged to have used the same stolen Block Protected Information. *See Block Electric Company, Inc. v. Joseph Jozsa, et al.*, 23-cv-00795 Verified Amended Complaint.

26. Contrary to his sworn deposition testimony in the IBS Litigation, on June 25, 2024, Arvesen told a Block employee that Hughes had placed the flash drive of Block's Protected Information in Arvesen's mailbox, thus enabling Arvesen to tap into Block's Protected Information for his new job at Midwest. Since early 2018, Arvesen and the other Defendants have repeatedly and consistently misused the stolen Block Protected Information.

27. The Block Protected Information Defendants have misused since 2018, consists of confidential bidding and pricing data and information contained within Block's Master Database. Block uses the Protected information, including the Block Master Data Base, to customize its licensed copy of the Accubid software program with Block's confidential and proprietary pricing, time, labor and other bidding data. This allows Block to create proprietary, user-specific bids for projects that no other contractor can replicate without Block's Protected Information. Block pays an annual fee to Accubid for the software program which Block then customizes with its confidential and proprietary pricing, time, labor, and other bidding data.

28. A contractor's editing, modification, and customization of the Accubid software involves adding myriad factors, including the contractor's overhead, insurance costs, material costs, construction timing, labor costs, and labor units. Such factors are not generally known to the public or industry, but are strictly confidential and proprietary to each contractor, and are adapted to each project on which the contractor bids. For Block, such information is the product of decades of industry experience and substantial investment, in both time and cost, to develop the bidding program and information contained therein. Indeed, Block's founders began compiling the Block Master Database in the 1920s and kept the information in a handwritten record that was only accessible to senior level Block employees and inaccessible to anyone outside the company. This information was transferred to the Block Master Data Base, and has been updated from time to time by senior Block executives with new data based on Block's own industry experience, research and expertise. Block's Accubid program contains Block's confidential pricing and other proprietary information that relates to, and is used in connection with, bids it submits for jobs not only in Illinois, but in other states as well.

29. The Block Master Database, including the confidential information it inputs into Block's Accubid program, contains information that reflects how Block has performed certain jobs for its customers over the years that is not known to the public or competitors. Block's Protected Information, including its Block Master Database, is kept confidential because the misuse or disclosure of such information could result in a customer defecting to one of Block's competitors.

30. Block's Master Database when used in an Accubid-generated estimate is kept confidential by Block because the information gives Block a competitive advantage over other contractors for jobs. For example, one contractor may have greater overhead than another contractor, but have available other savings, such as economies of scale, a less expensive or larger

work force, lower union expenses, or greater or less access to materials as well as labor units for specific projects which it inserts in its personalized Accubid software in an effort to make its bid more attractive than its competitors and win a contract. With access to the Accubid software program containing data from Block's Master Database, a competitor would know precisely how Block has bid out and staffed a job and can use that information to undercut or underprice Block's bid for the same work. Block has edited, modified, and customized its Accubid program with its confidential information from Block's Master Database for every estimate it has submitted since it began using Accubid.

31. Block has taken steps to protect the Block Master Database and its customized version of the Accubid software program, including making it password protected on the Block computer network. Block's customized version of the Accubid software program is available only to select management employees, such as Block's President, two Vice Presidents, and certain Project Managers, including Arvesen. Block's Master Database could **only** be modified by Block's Vice Presidents, Michael Block and Scott Block, and Block's Branch Manager, Jim McCormick. No other executives or employees had the ability to change any information in Block's Master Data Base (which also remained protected by passwords and other means).

32. Block maintains a written company policy that prohibits employees from accessing company networks and computers without authorization or for improper reasons, including misusing Block's data or competing with the company for personal financial gain. Violation of the company policy can result in discipline up to and including termination from Block. Block employees, including Arvesen, were aware of the confidential nature of Block's Protected Information, including the Block Master Database, and the security measures used by Block (to also be utilized by its employees) to protect such information. At all relevant times, including after

he left Block, Arvesen was subject to and aware of this policy, and was aware of his ongoing duty to maintain and not misuse the confidentiality of Block's computer-stored Protected Information and Master Database.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. §1836(b)(1)

**(Against Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT)**

33. Block reincorporates and realleges Paragraphs 1 through 32 of its Complaint as though fully set forth herein.

34. In his capacity as a Project Manager at Block, Arvesen was allowed access (*via* his own username and password) to Block's Protected Information, including its Master Database, solely for Block's business purposes, such as creating and submitting competitive bids through the Accubid software program for projects and monitoring costs on the contracts awarded as projects progressed. Arvesen was one of the few Block employees that had access to Block's Protected Information, including Block's Master Database. As such, Arvesen knew Block's costs, overhead, labor units, pricing history, client history, and profit margins because of his access to Block's Protected Information (derived from Block's Master Database) used with Accubid.

35. Block's Protected Information, including the data in Block's Master Database, was owned by Block and had significant independent economic value because it was not known to, and not readily ascertainable through proper means by, another person or party who could obtain economic value from its disclosure or use.

36. Block's Protected Information was used in, and revealed protected, competitive trade secret information that pertains to Block's transaction of business in interstate commerce.

37. On information and belief, Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT have used Block's Protected Information and the Accubid program containing

Block's Master Database to prepare bids for electrical contracting services. Based on information and belief, Midwest and MIT have been awarded in excess of 300 contracts as a direct result of its misappropriation and misuse of Block's Protected Information.

38. Each of the Defendants knew that using Block's Protected Information, as alleged herein, would cause significant damage to Block's business.

39. Each of the Defendants knew any unauthorized disclosure or use of Block's Protected Information would cause significant damage to Block's business, particularly if Block's Protected Information was disclosed to, and/or used by, any individual or company competing against Block.

40. Due to Defendants' violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), Block is entitled to an injunction to prevent the actual and threatened misappropriation and use of the trade secrets constituting Block's Protected Information.

41. Unless permanently enjoined by this Court, Defendants will continue to misuse and misappropriate Block's Protected Information and will cause Block damages and injury for which there is no adequate remedy at law.

42. Due to Defendants' willful and malicious misappropriation of Block's Protected Information in violation of the Defend Trade Secrets Act, Block is statutorily entitled to recover double damages and its attorneys' fees from the Defendants under18 U.S.C. § 1836(b)(3)(C), (D).

WHEREFORE, Plaintiff Block Electric Company, Inc. respectfully prays that this Court enter an order and judgment against Defendants Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT jointly and severally: (1) enjoining Defendants, or any person acting in concert with them, from using and/or misappropriating Block's Protected Information, including, but not limited to all data derived from Block's Master Database or any derivation

thereof that was ever used by Block at any time; (2) enjoining Defendants or any person acting in concert with them from directly or indirectly approaching, contacting or soliciting any customer or prospective customer using Block's Protected Information; (3) awarding Block its actual damages due to Defendants' conduct in an amount to be determined at trial; (4) awarding Block exemplary damages as provided by statute in an amount not to exceed twice its actual damages; (5) awarding Block its attorneys' fees and costs as allowed by statute; and (6) awarding Block such other and further relief as this Court deems just and proper.

**COUNT II – CIVIL CONSPIRACY**
**(Against Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT)**

43. Block reincorporates and realleges the allegations in Paragraphs 1 through 42 of its Complaint as if fully set forth herein.

44. Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT engaged in an unlawful agreement and otherwise conspired to formulate a scheme to damage Block's business by, among other things, stealing and converting Block's Protected Information for their own use.

45. Based on information and belief, Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest and MIT communicated with each other on multiple occasions to formulate how they could misuse Block's Protected Information to misappropriate business opportunities away from Block.

46. The full extent of the scheme carried out by the Defendants has been concealed from Block. Block would never have discovered Defendants' misuse of its Protected Information had Defendants not inadvertently shared the Excel spreadsheet in late 2023 with Block, which revealed that Defendants had stolen and were using Block's Protected Information

47. As a result of carrying out their scheme, Defendants Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT have benefitted from stealing Block's Protected

Information, its resources, opportunities, and the revenues Block had been earning – all to Block's detriment.

WHEREFORE, Plaintiff Block Electric Company, Inc. respectfully prays that this Court enter an order and judgment against Defendants Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT jointly and severally: (1) enjoining each Defendant and anybody acting in concert with them from using and/or misappropriating Block's Protected Information or any derivation thereof that was used by Block at any time; (2) enjoining Defendants or any person acting in concert with them from directly or indirectly approaching, contacting, or soliciting any customer or prospective customer using Block's Protected Information; (3) awarding Block its actual damages caused by Defendants' conduct in an amount to be determined at trial; (4) awarding Block exemplary and/or punitive damages in an amount to be determined at trial; and (5) awarding Block such other and further relief as this Court deems just and proper.

## COUNT III – BREACH OF FIDUCIARY DUTY
**(Against Arvesen)**

48. Block reincorporates and realleges Paragraphs 1 through 47 of its Complaint as if fully set forth herein.

49. At all times prior to his termination, Arvesen owed fiduciary duties to Block, including the duty of loyalty, good faith, and utmost honesty, while serving as a key employee in his position as Project Manager.

50. As a former Project Manager of Block, after resigning from the company, Arvesen owed a continuing duty of confidentiality to protect Block's Protected Information, not engage in its theft, and not benefit from its theft.

51. Arvesen has breached his fiduciary duties to Block in numerous ways including, but not limited to:

a. being disloyal and dishonest with Block by participating in the scheme to steal and misuse Block's Protected Information and disclosing it to people outside the company, including Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT;

b. misusing the stolen Block Protected Information to solicit business opportunities away from Block;

c. taking active steps to conceal his misappropriation of Block Protected Information and property from Block;

d. failing to protect Block's Protected Information and property after his resignation;

e. using Block's Protected Information to solicit and provide services to Block's competitors;

f. usurping Block's corporate opportunities for himself and his new employer.

52. By virtue of Arvesen's multiple breaches of his fiduciary duties to Block, Arvesen has caused Block substantial and irreparable damage, and should be forced to disgorge all compensation and the monetary equivalent of earned benefits paid to him by Midwest and/or MIT at least during the period of his breaches of his fiduciary duties.

53. Arvesen's conduct was willful, wanton and committed with malice aforethought, entitling Block to punitive damages, in an amount to be determined at trial, but not less than what Arvesen was paid during the period he first started communicating with Shannon, Bridget Shannon, Tim Shannon, Midwest, and/or MIT about the scheme alleged herein to a date through trial of this action.

WHEREFORE, Plaintiff Block Electric Company, Inc. prays that this Court enter an order and final judgment against Defendant Arvesen: (1) enjoining him or any person acting in concert with him, from using and/or misappropriating Block's Protected Information, including, but not limited to all data derived from Block's Master Database or any derivation thereof, that was ever used by Block at any time; (2) enjoining Arvesen or any person acting in concert with him from

directly or indirectly approaching, contacting, or soliciting any customer or prospective customer using Block's Protected Information; (3) awarding Block its actual damages caused by Defendant's unlawful conduct in an amount to be determined at trial; (4) awarding Block exemplary and/or punitive damages in an amount to be determined at trial; and (5) awarding Block such other and further relief as this Court deems just and proper.

**COUNT IV – AIDING AND ABETTING IN A BREACH OF FIDUCIARY DUTY**
**(Against Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT)**

54. Block reincorporates and realleges the allegations in Paragraphs 1 through 53 of its Complaint as if fully set forth herein.

55. As alleged herein, Arvesen breached his fiduciary duties to his former employer, Block.

56. Defendants Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT aided Arvesen in his breaches of fiduciary duties, which caused significant injury to Block.

57. Defendants Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT aided Arvesen in his breaches of fiduciary duties in numerous ways, including but not limited to:

a. encouraging and participating in the scheme to steal and misuse Block's Protected Information and disclosing it to people outside of Block;

b. encouraging Arvesen to act against Block's best interests; and

c. assisting Arvesen in the concealment of his wrongful acts against Block.

58. Defendants Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT were aware of their roles when they provided assistance to Arvesen because they believed they would benefit from his conduct.

59. Defendants Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT knowingly and substantially assisted Arvesen in his breaches of his fiduciary duties to Block,

including for the reasons stated above.

WHEREFORE, Plaintiff Block Electric Company, Inc. prays that this Court enter an order and judgment against Defendants Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT jointly and severally: (1) enjoining Defendants, or any person acting in concert with them, from using and/or misappropriating Block's Protected Information, including, but not limited to all data derived from Block's Master Database or any derivation thereof, that was ever used by Block at any time; (2) enjoining Defendants, or any person acting in concert with them, from directly or indirectly approaching, contacting, or soliciting any customer or prospective customer using Block's Protected Information; (3) awarding Block its actual damages caused by Defendants' unlawful conduct in an amount to be determined at trial; (4) awarding Block exemplary and/or punitive damages in an amount to be determined at trial; and (5) awarding Block such further relief as this Court deems just and proper.

**COUNT VII – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, *et seq.***
**(Plead in the Alternative Against Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT)**

60. Block reincorporates and realleges the allegations in Paragraphs 1 through 59 of its Complaint as if fully set forth herein.

61. Block is the owner of the Block Protected Information, including but not limited to its editing, modifications, and customization of the Accubid software program that contained data from Block's Master Database, which Block used to obtain contractual relationships with customers.

62. Block took reasonable measures to keep the Block Protected Information secret.

63. Block's Protected Information derives independent economic value from not being generally known to, and not readily ascertainable through proper means by, another person or entity who can obtain economic value from its disclosure or use, including but not limited to the sale and management of electrical contracting services, materials, and management for prospective customers.

64. Defendants, Arvesen, Shannon, Bridget Shannon, Tims Shannon, Midwest, and MIT acquired Block's Protected Information through improper means and without authorization.

65. Arvesen, Shannon, Bridget Shannon, and Tim Shannon have disclosed Block's Protected Information to others at Midwest or MIT who, based on information and belief, have used it to contact other Block customers and prospective customers without Block's express or implied consent.

66. Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT knew or had reason to know that Arvesen acquired Block's Protected Information by improper means, and that such information would not be available to the public and would not be allowed to be taken or used by Arvesen upon his resignation from Block.

67. Due to Defendants' violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*, Block is entitled to an injunction to prevent the actual and threatened misappropriation of Block's Protected Information.

68. Unless enjoined by this Court, Defendants will continue to use and misappropriate Block's Protected Information, causing damages and injury for which Block has no adequate remedy at law.

69. Due to Defendants' violation of the Illinois Trade Secrets Act as alleged herein, Block is entitled to recover damages for actual losses caused by the misappropriation of Block's Protected Information and Master Data Base and damages for any unjust enrichment enjoyed by Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT.

70. Due to Defendants' willful and malicious misappropriation of the trade secrets constituting the Block Protected Information in violation of the Illinois Trade Secrets Act, Block is entitled to recover double damages, attorneys' fees, and costs of this suit. 765 ILCS 1065/5.

WHEREFORE, Plaintiff Block Electric Company, Inc. prays that this Court enter an order and judgment against Defendants Arvesen, Shannon, Bridget Shannon, Tim Shannon, Midwest, and MIT jointly and severally: (1) enjoining Defendants, or any person acting in concert with them, from using and/or misappropriating Block's Protected Information, including, but not limited to all data derived from Block's Master Database or any derivation thereof, that was ever used by Block at any time; (2) enjoining Defendants, or any person acting in concert with them, from directly or indirectly approaching, contacting, or soliciting any customer or prospective customer using Block's Protected Information; (3) awarding Block its actual damages due to Defendants' unlawful conduct in an amount to be determined at trial, as well as Block's attorneys' fees and costs; and (4) awarding Block such other and further relief as this Court deems just and proper.

## COUNT VIII – UNJUST ENRICHMENT/QUANTUM MERUIT
**(Pled in the Alternative against all Defendants)**

71. Block reincorporates and realleges the allegations in Paragraphs 1 through 70 of its Complaint as if fully set forth herein.

72. Defendants have unjustly retained the benefit of utilizing Block's Protected Information, including but not limited to its editing, modifications, and customization of the Accubid software program (containing confidential data derived from Block's Master Database), which Block used to obtain contractual relationships.

73. Block's Protected Information derives independent economic value (a benefit unjustly retained by Defendants) from not being generally known to, and not readily ascertainable through proper means by, another person or entity who can obtain economic value from its disclosure or use, including but not limited to the sale and management of electrical contracting services, materials, and management for prospective customers.

74. The utilization of Block's Protected Information resulted in other benefits to Defendants, including but not limited to enabling Midwest and MIT to bid on jobs while using Block's Protected Information and allowing Defendants to interfere with Block's accounts, clients, and contractual relationships.

75. Due to the economic value of the unjustly retained benefit of utilizing Block's Protected Information, Defendants' retention of this benefit is a detriment to Block.

76. Defendants' retention of the benefit violates fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff Block Electric Company, Inc. prays that this Court enter an order and judgment against Defendants jointly and severally: (1) awarding Block its actual damages for unjust enrichment due to Defendants' unlawful conduct in an amount to be determined at trial; and (2) awarding Block such other and further relief as this Court deems just and proper.

Date: March 16, 2026

Respectfully submitted,

**BLOCK ELECTRIC COMPANY, INC.**,
an Illinois corporation,

By: *\/s/ Stephen C. Voris*
One of Plaintiff's Attorneys

Stephen C. Voris (ARDC #3125573)
svoris@burkelaw.com
Morgan M. Hess (ARDC #6332804)
mhess@burkelaw.com
Christopher A. Verdugo (ARDC #6336902)
cverdugo@burkelaw.com
**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
T: (312) 840-7000 | F: (312) 840-7900